J-S15004-26                    2026 PA Super 162

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON MAURICE HOLBROOK | : | |
| | : | |
| Appellant | : | No. 166 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 2, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0006690-2023

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY OLSON, J.:                              **FILED JULY 29, 2026**

Appellant, Aaron Maurice Holbrook, appeals from the December 2, 2024 judgment of sentence entered in the Court of Common Pleas of Montgomery County after the trial court, in a stipulated bench trial, convicted Appellant of persons not to possess, use, manufacture, control, sell, or transfer firearms.[1] On December 2, 2024, the trial court sentenced Appellant to 20 to 72 months' incarceration.  We affirm.

The record reveals that, stemming from a traffic stop of Appellant's vehicle on March 22, 2023, Appellant was charged, on February 2, 2024, with persons not to possess, use, manufacture, control, sell, or transfer firearms (Count 1), firearms not to be carried without a license (Count 2), receiving stolen property (Count 3), knowingly or intentionally possessing a controlled

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1).

or counterfeit substance by a person not registered under The Controlled Substance, Drug, Device and Cosmetic Act (Count 4), use of, or possession with intent to use, drug paraphernalia (Count 5), and one count each of windshield obstructions and wipers (Counts 6 and 7).[2] On March 6, 2024, Appellant moved to suppress the evidence obtained as a result of the traffic stop. On May 31, 2024, the trial court conducted a hearing on Appellant's suppression motion and subsequently made the following findings of fact:

2. On March 22, 2023, Pennsylvania State Police Trooper Justin Howell [("Trooper Howell")] was driving a marked patrol unit on Interstate 76 Westbound near the City Avenue exit [located on the border between Montgomery County and Philadelphia County, Pennsylvania,] when he observed a [vehicle] with dark window tinting proceed onto the exit ramp.

3. Trooper Howell indicated the window tinting was present on all four [] windows of the [vehicle] in addition to the rear windshield and prevented him from seeing inside the vehicle.

4. [Trooper Howell] subsequently initiated a traffic stop of the [vehicle] on City Avenue in the left turn lane leading to Presidential Boulevard.

5. Trooper Howell has multiple years of experience with drug investigations involving vehicles.

6. Trooper Howell approached the [vehicle] and when the driver, later identified as [Appellant], lowered the driver's side window, [Trooper Howell] observed multiple air fresheners inside the vehicle.

_____

[2] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 3925(a), as well as 35 P.S. §§ 780-113(a)(16) and (a)(32) and 75 Pa.C.S.A. § 4524(a) and (b), respectively.

7. Trooper Howell also observed that [Appellant's] hands were shaking when the trooper asked for his [driver's] license and [vehicle] registration [information. Trooper Howell] described [Appellant's] demeanor as a display of "overt nervousness" and further noted that [Appellant's] carotid artery was "violently pulsating." [Trooper Howell] also indicated that [Appellant] would not make eye contact with him during this time.

8. Trooper Howell acknowledged that individuals are typically nervous during traffic stops, but [Appellant's] behavior was unique considering that while other individuals usually become less anxious during the course of a stop, [Appellant's] nervousness never subsided.

9. Trooper Howell proceeded to [check Appellant's] criminal history [in police databases] and asked [Appellant] if he had "ever been in trouble" before. [Appellant] responded that his past trouble related to "girl stuff." The criminal history check revealed [Appellant] had been arrested in 2017[,] for firearm and narcotic[s-]related offenses.

10. [Trooper Howell] subsequently requested [Appellant] exit the vehicle. Due to his belief that criminal activity was afoot, Trooper Howell also asked [Appellant] for consent to search the vehicle, which [Appellant] denied. [Appellant] did provide the trooper with consent to perform a pat[-]down of his person, but this did not result in the discovery of any firearms [or] contraband.

11. Trooper Howell asked [Appellant] if anything "crazy" was inside the vehicle and informed him that a canine officer was on its way to perform a sniff of the vehicle. The canine officer took approximately [40] to [45] minutes to arrive, during which time [Trooper Howell] did not allow [Appellant to] enter the vehicle. Officer [Horace] Lopez [("Officer Lopez")] of the Philadelphia Police Department, who was responsible for the handling of the canine officer, indicated that he was over [30] minutes from the site of the traffic stop when he received the call for assistance.

12. Trooper Howell observed that [Appellant] was pacing and sweating profusely during the time period when they were waiting for the canine officer to arrive. [Trooper Howell] informed [Appellant] that he was free to leave, but the

vehicle would have to remain at the scene. [Appellant] chose to remain with the vehicle.

13. During his sniff [search] of the exterior of the [vehicle], the canine officer stopped and sat multiple times at the rear door of the vehicle. Officer Lopez indicated he did not give the canine [officer] any instructions to sit. Officer Lopez testified that the canine [officer] was [trained as] a narcotics [] dog [] to sit whenever he detects the presence of narcotics. The canine officer is specifically trained to detect crack [cocaine], cocaine powder, ecstasy, marijuana, heroin, heroin mixed with fentanyl[,] and also certain opioids.

14. Officer Lopez's ultimate conclusion regarding the canine officer's movements was that its acts of sitting multiple times constituted a "hit" for narcotics inside the vehicle.

15. Following the canine [sniff] search, Trooper Howell informed [Appellant] that the vehicle would be towed and authorities would apply for a search warrant unless [Appellant] provided consent to search [the vehicle].

16. [Appellant] consented to the search and authorities recovered, [a firearm, 15] morphine pills and two [] oxycodone pills.

17. The [trial] court finds the testimony of Trooper Howell and Officer Lopez to be credible.

Trial Court Findings of Fact and Conclusions of Law, 7/21/24, at 1-3. On June 21, 2024, the trial court denied Appellant's suppression motion.

On September 4, 2024, the trial court, in a stipulated bench trial, convicted Appellant of Count 1 - persons not to possess, use, manufacture, control, sell, or transfer firearms. That same day, the trial court granted the Commonwealth's motion to *nol pros* Appellant's remaining criminal charges. On December 2, 2024, the trial court sentenced Appellant to 20 to 72 months'

incarceration in a state correctional facility and ordered Appellant to pay the costs of prosecution. This appeal followed.[3]

Appellant raises the following issues for our review:

1. [Whether] the trial court erred in denying the motion to suppress evidence where the Philadelphia Police officer clearly equivocated on video as to whether or not the [canine officer] alerted on the vehicle and where the video clearly indicates that the [canine officer], a passive alert dog, only sat after being pulled away from the vehicle by his handler[?]

2. [Whether] the trial court erred in denying the motion to suppress evidence without argument or transcripts of testimony, which were not completed for nearly two months after the order denying the motion to suppress and after issuing a briefing schedule to allow for said argument, then *sua sponte*, denying the motion to suppress evidence [] without allowing [Appellant] to present any argument, whether written or oral[?]

3. [Whether] the trial court erred in denying the motion to suppress evidence where the video of the incident clearly demonstrates that consent was coerced after an extended stop and through coercive tactics by [Trooper Howell?]

Appellant's Brief at 5 (extraneous capitalization omitted).[4]

Our standard of review in addressing a trial court's order denying a suppression motion is well-settled.

---

[3] Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

[4] We note that Appellant filed his appellate brief after the deadline by which to file a timely brief. While we do not condone Appellant's failure to file a timely brief, we accept the late-filed brief and shall consider the arguments set forth therein.

We are limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the [suppression] court's legal conclusions are erroneous. Where[] the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." Thus, the conclusions of law of the [suppression court] are subject to our plenary review.

*Commonwealth v. Ross*, 330 A.3d 1262, 1267 (Pa. Super. 2025) (citation and original brackets omitted). "[It] is within the suppression court's sole province as fact[-]finder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Ross*, 297 A.3d 787, 791 (Pa. Super. 2023) (original brackets omitted).

Appellant's challenge to the trial court's order denying his motion to suppress is multi-faceted. Appellant does not dispute the validity of the routine traffic stop initiated by Trooper Howell. Instead, Appellant appears to suggest that Trooper Howell did not have reasonable suspicion to request a canine sniff of his vehicle based simply upon the observation of multiple air fresheners in the vehicle and the fact that Appellant appeared nervous. Appellant's Brief at 10. Appellant further asserts that, even if there were reasonable suspicion to have the canine sniff-search the exterior of his vehicle, the canine officer failed to alert to the presence of contraband but, according

to Appellant, simply reacted to his handler by sitting next the vehicle. *Id.* Appellant argues that because the canine officer did not alert to the presence of contraband in the vehicle, Trooper Howell did not have probable cause to conduct a warrantless search of the vehicle. *Id.* Finally, Appellant contends that his consent to search the vehicle was unlawfully coerced by Trooper Howell and, therefore, was not voluntarily. *Id.* at 13-14.

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and Article I, Section 8 of the Pennsylvania Constitution protect a person from unreasonable searches and seizures by police in areas where the person has a reasonable expectation of privacy.[5] ***Commonwealth v. Barr***, 266 A.3d 25, 39 (Pa.

---

[5] The Fourth Amendment provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The Pennsylvania Constitution provides,

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

2021). "To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." **Ross**, 297 A.3d at 792 (citation omitted). The three forms of police-interaction have long-been defined as: (1) a mere encounter, which can be any formal or informal interaction between a law enforcement officer and a citizen and carries no official compulsion to stop or respond, requires no level of suspicion, (2) an investigative detention, which, by implication, carries an official compulsion to stop and respond, requires reasonable suspicion that criminal activity is afoot, and (3) custodial detention, which occurs "when the nature, duration, and conditions of an investigative detention become so coercive as to be, practically speaking, the function equivalent of an arrest," requires the showing of probable cause to support the arrest. **Commonwealth v. Graham**, 353 A.3d 225, 230 (Pa. Super. 2026).

> A police officer has the authority to stop a vehicle when he or she has reasonable suspicion that a violation of the [V]ehicle [C]ode has taken place, for the purpose of obtaining necessary information to enforce the provisions of the [Vehicle Code]. However, if the violation is such that it requires no additional investigation, the [police] officer must have probable cause to initiate the stop.

---

PA CONST. art. I, § 8.

*Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013) (citations omitted), *appeal denied*, 79 A.3d 1096 (Pa. 2013); *see also Commonwealth v. Chase*, 960 A.2d 108, 113 (Pa. 2008) (stating, "[t]he Fourth Amendment does not prevent police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if it is a minor offense"); *Commonwealth v. Prizzia*, 260 A.3d 263, 267 (Pa. Super. 2021) (stating, "Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense").

At the suppression hearing, Trooper Howell testified that, while on routine patrol on the date of the incident, he observed Appellant's vehicle having "dark," "aftermarket tint" on the driver's side and passenger's side windows, as well as the rear windshield, of the vehicle. N.T., 5/31/24, at 8, 11. The tint on the windows prevented Trooper Howell from being able to see the interior of the vehicle. *Id.* at 11. Section 4524(e)(1) of the Vehicle Code prohibits the use of sun screening or other materials, such as window tint, on a motor vehicle when the sun screening or other material "does not permit a person to see or view the inside of the vehicle through the windshield, side wings[,] or side window of the vehicle." 75 Pa.C.S.A. § 4524(e)(1). Trooper Howell observed Appellant's vehicle in violation of Section 4524 because the window tint on Appellant's vehicle prevented Trooper Howell from viewing the interior of the vehicle. As such, we concur with the trial court, and the record supports, that Trooper Howell had probable cause to initiate a traffic stop of

Appellant's vehicle. *See* Trial Court Findings of Fact and Conclusions of Law, 6/21/24, at 8, ¶ 21.

> In the context of a traffic stop, the United States Supreme Court held that the duration of police inquiries is determined by the seizure's "mission" - to address the traffic violation that warranted the stop and attend to related safety concerns. A stop becomes unlawful when it lasts longer than is necessary to complete its mission, the rationale being that the authority for the seizure ends when tasks tied to the traffic infraction are - or reasonably should have been - completed. The [United States] Supreme Court elaborated that the critical question is not whether the inquiry occurs before or after the [police] officer issues a ticket, but whether it prolongs[,] *i.e.*, adds time to[,] the stop.

*Ross*, 297 A.3d at 792 (citations, quotation marks, ellipsis, and original brackets omitted), *relying on* ***Rodriguez v. United States***, 575 U.S. 348 (2015).

> Beyond determining whether to issue a traffic ticket, [a police] officer's mission includes ordinary inquiries incident to the traffic stop. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the [vehicle's] registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

*Rodriguez*, 575 U.S. at 355 (citations, quotation marks, and original brackets omitted); *see also **Commonwealth v. Sloan***, 303 A.3d 155, 164 (Pa. Super. 2023); *Graham*, 353 A.3d at 231; *Ross*, 297 A.3d at 792.

> Our Supreme Court has expressly recognized that [a police] officer conducting a valid traffic stop may order the [driver or other] occupants of a vehicle to alight to assure his [or her] own safety. Once the primary traffic stop has concluded, however, the [police] officer's authority to order either the driver or occupant from the car is extinguished. Thus, if the [police] officer directs or requests

the occupants to exit the vehicle after resolution of the reason for the initial stop, the [police] officer's show of authority may constitute an investigatory detention subject to a renewed showing of reasonable suspicion.

*Commonwealth v. Mattis*, 252 A.3d 650, 655 (Pa. Super. 2021) (citations omitted); *see also Ross*, 297 A.3d at 793 (stating, "allowing police officers to control all movement in a traffic encounter is a reasonable and justifiable step towards protecting their safety" (ellipsis omitted) (*quoting Commonwealth v. Pratt*, 930 A.2d 561, 567-568 (Pa. Super. 2007), *appeal denied*, 946 A.2d 686 (Pa. 2008)); *Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa. Super. 2019) (stating, "when [a police] officer detains a vehicle for violation of a traffic law, it is inherently reasonable that he or she be concerned with safety and, as a result, may order the occupants of the vehicle to alight from the [vehicle]" (citation and original quotation marks omitted)), *appeal denied*, 237 A.3d 393 (Pa. 2020).

> In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his [or her] experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Sloan*, 303 A.3d at 164 (ellipsis omitted), *quoting Commonwealth v. Smith*, 917 A.2d 848, 852 (Pa. Super. 2007); *see also Graham*, 353 A.3d at 230. "Reasonable suspicion is dependent on both the quantity and quality of the

information police possess prior to detaining an individual." ***Commonwealth v. Jefferson***, 256 A.3d 1242, 1248 (Pa. Super. 2021), *appeal denied*, 268 A.3d 1071 (Pa. 2021). The police officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." ***Jefferson***, 256 A.3d at 1248-1249, *quoting* ***United States v. Sokolow***, 490 U.S. 1, 7 (1989). "[T]he fundamental inquiry is an objective one, namely, whether the facts available to police at the moment of the intrusion warrant [an individual] of reasonable caution in the belief that the action taken was appropriate." ***Jefferson***, 256 A.3d at 1248.

To order a canine sniff of a place, including a vehicle, law enforcement "need merely [to] have reasonable suspicion for believing that narcotics would be found in the place subject to the canine sniff." ***Commonwealth v. Rogers***, 849 A.2d 1185, 1190 (Pa. 2004); ***see also Commonwealth v. Harris***, 176 A.3d 1009, 1021 (Pa. Super. 2017) (stating, "considering the relatively minor privacy interest in the exterior of the vehicle and the minimal intrusion occasioned by a canine sniff, mere reasonable suspicion, rather than probable cause, is required prior to a [canine] sniffing the exterior of a vehicle" (citation, original brackets, and ellipsis omitted)).

Trooper Howell stated that, after initiating the traffic stop and approaching Appellant's vehicle, he observed that "[w]ithin the vehicle there were multiple air fresheners" and that Appellant appeared "over-nervous" with his hands "shaking uncontrollably." N.T., 5/31/24, at 12. Trooper Howell also stated that, when he was standing next to Appellant, he observed that

- 12 -

Appellant's carotid artery was "pulsating in his neck." *Id.* As Appellant interacted with the trooper, he failed to make eye contact. *Id.* at 20-21. Trooper Howell explained that, in his experience, a person's nervousness subsides during the interaction but, in Appellant's case, his nervousness did not subside during the course of the traffic stop.

As part of his initial interaction with Appellant, Trooper Howell asked for, and obtained, Appellant's driver's license, vehicle registration card, and insurance information. *Id.* at 12-13. Trooper Howell then returned to his patrol vehicle and verified Appellant's information. *Id.* at 13. Trooper Howell also performed a check of Appellant's criminal history, which revealed that, in 2017, Appellant had been arrested in connection with a firearm and narcotics investigation. *Id.* at 13-14. Trooper Howell testified that "based upon all of [his] observations and [the fact that Appellant was not] forthcoming regarding [his] criminal history[,[6] he] approached the driver's side of the [vehicle] and

_____

[6] Trooper Howell indicated that he asked Appellant if he had ever been in trouble with law enforcement in the past. The trial court credited a review of the video recording captured from the police cruiser's dash camera and the audio device worn by Trooper Howell for the fact that Appellant indicated his past troubles "related to 'girl stuff'" Trial Court Opinion, 3/10/25, at 9 (*citing* Commonwealth Exhibit C-1). The certified record presently before us does not include a copy of the video recording. However, based upon a review of Trooper Howell's testimony, we are able to conclude that in response to the question regarding whether, or not, he previously experienced trouble with law enforcement, Appellant did not disclose his 2017 arrest related to a firearm and narcotics investigation. *See* N.T., 5/31/24, at 14 (explaining that what "stood out" to Trooper Howell in his review of Appellant's criminal history was the 2017 arrest, indicating that until he reviewed Appellant's criminal history, this information was unknown to Trooper Howell). Reading the

asked [Appellant] to step out of the vehicle." *Id.* at 14. Based upon his belief that "some kind of criminal activity was afoot," Trooper Howell requested a canine officer for purpose of conducting a sweep of the exterior of Appellant's vehicle. *Id.* at 14-15.

There is no evidence in the certified record that, before Trooper Howell requested Appellant to alight from his vehicle, he returned Appellant's documents to him and issued a citation for the motor vehicle violation thereby concluding the "mission" of the traffic stop. As such, upon returning to Appellant's vehicle, Trooper Howell was permitted to ask Appellant to alight from the vehicle for safety concerns. We further concur with the trial court, and the record supports, that Trooper Howell had, at the time he returned to Appellant's vehicle, reasonable suspicion to prolong the traffic stop by maintaining control of Appellant's vehicle in order to conduct a canine search of the vehicle. Based upon his experience and training in conducting traffic stops that, ultimately, involved the discovery of firearms and controlled substances, Trooper Howell articulated that he observed several *indicia* that criminal activity was afoot. In particular, Trooper Howell noted the vehicle contained multiple air fresheners, that Appellant avoided eye contact when interacting with the trooper, that Appellant appeared overly nervous with a pulsating carotid artery, and that his nervousness did not subside. Appellant

---

suppression record in the light most favorable to the Commonwealth, as the prevailing party, we assume that Appellant's arrest contributed to Trooper Howell's decision to request a canine sniff search of Appellant's vehicle.

also failed to disclose his prior arrest for firearms and narcotics offenses. Based upon the totality of the circumstances and in viewing the evidence in the light most favorable to the Commonwealth, as the party that prevailed at the suppression hearing, Trooper Howell had reasonable suspicion to prolong the traffic stop to conduct a canine sweep of the vehicle.

As discussed *supra*, both the federal and Pennsylvania constitutions protect individuals, as well as their homes, papers, effects, and possessions, from unreasonable searches and seizures. ***Commonwealth v. Valdivia***, 195 A.3d 855, 861 (Pa. 2018).

> For a search to be lawful, police must first obtain a warrant, supported by probable cause, from a neutral and detached magistrate. A search conducted without a warrant is deemed to be unreasonable and[,] therefore[,] constitutionally impermissible, unless an established exception applies.
>
> One of the limited exceptions to the warrant requirement is a consensual search. We have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so. Although a warrantless, but consensual, search is constitutionally permissible, obtaining consent is an "investigative tool" utilized by law enforcement. It allows police to do what otherwise would be impermissible without a warrant. As a consent search is in derogation of the Fourth Amendment, there are carefully demarked limitations as to what constitutes a valid consent search.
>
> First, consent must be voluntarily given during a lawful police interaction. For a finding of voluntariness, the Commonwealth must establish that the consent given by the defendant is the product of an essentially free and unconstrained choice - not the result of duress or coercion, express or implied, or a will overborne - under the totality of the circumstances.
>
> If consent is given voluntarily, the ensuing search must be conducted within the scope of that consent. The standard for

measuring the scope of an individual's consent is one of "objective reasonableness." We do not ascertain the scope of consent from the individual's subjective belief or the [law enforcement] officer's understanding based on his or her training and experience, but based on what the typical reasonable person would have understood by the exchange between the officer and the suspect.

*Id.* at 861-892 (citations, footnotes, ellipsis, some quotation marks, and original brackets omitted). Here, Appellant challenges the first element of the consent exception, namely that this consent to search the vehicle was not voluntary.[7]

_____

[7] Appellant contends that the canine officer did not demonstrate a "hit" on the vehicle indicating that it contained contraband but, rather, sat in response to a command provided by Officer Lopez. Appellant's Brief at 9-11. As such, according to Appellant, Trooper Howell did not have probable cause to conduct a warrantless search of this vehicle. *Id.* Appellant's claim that the canine officer's search of the vehicle was insufficient to establish probable cause to conduct a warrantless search of the vehicle would be pertinent if the trial court denied the motion to suppress based upon the automobile exception to the warrant requirement. *See Commonwealth v. Alexander*, 243 A.3d 177, 207 (Pa. 2020) (stating that, to establish the automobile exception permitting a warrantless search of a vehicle, the Commonwealth must demonstrate "both probable cause and exigent circumstances[, as] one without the other is insufficient" (citation and original quotation marks omitted)). The trial court, however, found that the warrantless search of Appellant's vehicle was valid under the consent exception. Therefore, we analyze whether, or not, the trial court erred in denying suppression based upon consent.

Regarding the consent exception, as discussed in greater detail *infra*, Appellant challenges the validity of his consent for law enforcement to search the interior of his vehicle, which was provided **after** the canine officer's sniff search of the vehicle's exterior indicated that the vehicle contained contraband. Appellant's Brief at 13-14.

In determining whether, or not, consent to search a vehicle was voluntarily provided, our Supreme Court has promulgated the following non-exclusive list of factors to be considered:

> 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) whether the person has been told that he [or she] is free to leave; and 9) whether the citizen has been informed that he [or she] is not required to consent to the search.

*Commonwealth v. Kemp*, 961 A.2d 1247, 1261 (Pa. Super. 2008), *citing Commonwealth v. Strickler*, 757 A.2d 884, 898-899 (Pa. 2000); *see also Commonwealth v. Robertson*, 186 A.3d 440, 447-448 (Pa. Super. 2018) (detailing a list of factors evincing voluntariness), *appeal denied*, 195 A.3d 852 (Pa. 2018). "[T]he Commonwealth must prove that a consent is the product of an essentially free and unconstrained choice - not the result of duress or coercion, express or implied, or a will overborne - under the totality of the circumstances." *Commonwealth v. Mack*, 796 A.2d 967, 970 (Pa. 2002) (citation and original quotation marks omitted).

Appellant asserts that "the consent that Trooper Howell ultimately obtained [to search his vehicle] was clearly coerced after a prolonged traffic

stop in a very dangerous intersection.[8]  Appellant's Brief at 13.  Appellant

contends that Trooper Howell made several requests of him to provide consent

and indicated that if he did not provide consent the vehicle would be towed

and later searched pursuant to a warrant.  *Id.*  Appellant maintains that he

"pushed back" to the requests for consent, asking "what he was supposed to

do, be stranded in the middle of a road that [was] not safe for pedestrians."

*Id.*  According to Appellant, "after over an hour of going back and forth about

[his providing consent, he] finally acquiesced and allowed [Trooper Howell] to

search the vehicle."  *Id.*  Appellant asserts that the "search as not voluntary

at all, but instead the fruit of an hour plus long stop, constant pressure from

[Trooper Howell,] in a very high-pressure situation."  *Id.* at 14.

> In denying Appellant's motion to suppress, the trial court found

> Trooper Howell did not engage in any tactics which could be classified as coercive nor was his mere presence during a valid traffic stop and investigative detention coercive. [Trooper Howell] did not exercise any show of force and there was no evidence that [Appellant] could not comprehend what was occurring or the nature of [Trooper Howell's] request to search the vehicle. [Trooper Howell's] threat to obtain a warrant constituted a legitimate police activity which is not a dispositive factor in the voluntariness analysis.  Therefore, the evidence demonstrates that [Appellant's] consent to a search of the vehicle was entirely

_____

[8] In support of the claim that his consent to search the vehicle was not voluntary, Appellant relies on the video evidence, Commonwealth Exhibit C-1. Appellant's Brief at 14 (stating, [t]hroughout the stop[,] one can see a constant flow of traffic in both directions on City [Avenue], basically surrounding the incident in traffic").  We reiterate that the video recording, Commonwealth Exhibit C-1, was not made a part of the certified record.

> voluntary and allowed authorities to perform a legal search without a warrant.

Trial Court Findings of Fact and Conclusions of Law, 6/21/24, at 8, ¶ 29.

Trooper Howell testified that he initiated the traffic stop after Appellant maneuvered his vehicle to the end of the Interstate exit ramp and was positioned on City Avenue. N.T., 5/31/24, at 8. The vehicle was stopped in a lane of travel on City Avenue because, as Trooper Howell indicated, "there's no shoulders" on City Avenue. *Id.* After he requested a canine officer to conduct a search of the vehicle, he informed Appellant that he was free to leave the scene of the traffic stop. *Id.* at 16, 19. Appellant, however, indicated to Trooper Howell that he would stay with his vehicle. *Id.* at 16. Trooper Howell stated that additional troopers were on the scene with him and that an additional patrol cruiser was positioned in the lane of travel next to Appellant's vehicle in order to create a safer environment in which to conduct the canine search. *Id.* at 17. Trooper Howell explained that the reason he asked Appellant "so many times" whether, or not, he consented to the search was because he believed that he needed Appellant to confirm, "yes" or "no", as to whether he consented to **a search** of the interior of the vehicle and not just state that he authorized Trooper Howell **to look** in the vehicle. *Id.* at 18-19. Trooper Howell discussed with Appellant that if consent to search the interior of the vehicle was not provided, the vehicle would be impounded and Appellant would be responsible for the towing charges. *Id.* at 18. Appellant indicated that he needed his vehicle. *Id.*

Based upon the totality of the circumstances and in viewing the evidence in the light most favorable to the Commonwealth, as the party that prevailed at the suppression hearing, we concur with the trial court, and the record supports that Appellant voluntarily consented to the search of the interior of his vehicle.[9] Although the interior search was conducted while the vehicle was positioned in a lane of travel this was due to the lack of a shoulder area along the roadway. The additional police presence involved Officer Lopez, who was the canine handler, and any additional law enforcement officers and vehicles were used to provide a safe environment for the parties and the canine officer. As such, the police presence was not excessive. Appellant was not handcuffed or restrained at the time he gave consent. Rather, as Trooper Howell indicated, Appellant was free to leave the scene but, instead, chose to remain with his vehicle. Trooper Howell explained that he asked Appellant several times about providing consent because he wanted to ensure that Appellant was giving Trooper Howell permission **to search** the interior of the vehicle and not simply **look** in the vehicle. Although Trooper Howell did not indicate that he informed Appellant of his right to refuse consent, it is clear from Appellant's assertion that he "pushed back" to the trooper's requests for consent that Appellant understood he had the right to refuse consent. *See Kemp*, 981 A.2d at 1261 (stating, "[w]hile knowledge of the right to refuse

---

[9] "Article I, Section 8 of the Pennsylvania Constitution does not require that the Commonwealth establish a knowing and intelligent waiver of the right to refuse consent in order for the consent to be valid." *Mack*, 796 A.2d at 970.

- 20 -

to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge" (citation and original brackets omitted)). Based upon the totality of the circumstances, we reach the same conclusion as the trial court, namely that Appellant voluntarily consented to the search of the interior of his vehicle. As such, we discern no error of law or abuse of discretion in the trial court's order denying Appellant's motion to suppress.[10]

_____

[10] Appellant claims that the trial court erred in denying his motion to suppress without permitting Appellant to file a brief in support of his motion upon conclusion of the suppression hearing and before the trial court disposed of the motion. We find this issue merits no relief.

Pennsylvania Rule of Criminal Procedure 581, which governs motions for the suppression of evidence, provides, in pertinent part that, upon filing a motion to suppress and the scheduling of a hearing,

> (F) The hearing, either before or at trial, ordinarily shall be held in open court. The hearing shall be held outside the presence of the jury. In all cases, the [trial] court may make such order concerning publicity of the proceedings as it deems appropriate under Rules 110 and 111.
>
> (G) A record shall be made of all evidence adduced at the hearing.
>
> (H) The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights. The defendant may testify at such hearing, and if the defendant does testify, the defendant does not thereby waive the right to remain silent during trial.
>
> (I) At the conclusion of the hearing, the [trial court] shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the

Judgment of sentence affirmed.

_____

defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought.

Pa.R.Crim.P. 581(F) – (I). While Rule 581 affords a defendant the right to testify at the suppression hearing, the Rule does not provide a defendant the right to offer oral or written argument in support of his or her suppression motion. It is within the sole discretion of the trial court as to whether, or not, oral or written argument is necessary to aid the trial court in the disposition of the suppression motion.

Appellant has cited no caselaw or rule of law that **requires** the suppression court to afford a defendant an opportunity to provide, or submit, an argument in support of the motion at the conclusion of the suppression hearing. ***See generally*** Appellant's Brief at 11-12. Our own research reveals that in ***Commonwealth v. Lowery*** this Court seemingly extended a defendant's constitutional right to summation at the conclusion of a criminal trial (***see*** Pa.R.Crim.P. 604(B) (stating, "[w]hen the evidence is concluded, each party shall be **entitled** to present one closing argument" (emphasis added))) to a suppression hearing. ***See Commonwealth v. Lowery***, 419 A.2d 604, 609-610 (Pa. Super. 1980). The original version of Rule 581 was adopted in 1965 and the provision was amended several times after the decision in ***Lowery*** but did not incorporate a requirement that the trial court afford a defendant the right to provide, or submit, argument in support of a suppression motion. ***See generally*** Pa.R.Crim.P. 581. Rather, due process requires, *inter alia*, that the defendant be provided an opportunity to be heard. At the suppression hearing in the case *sub judice*, Appellant had the opportunity to object, to cross-examine the Commonwealth's witnesses, and present his own evidence, and, in so doing, Appellant framed the issues to be decided by the trial court based upon the record created. We acknowledge that the trial court, at first, issued an order that scheduled the filing of party briefs after the conclusion of the suppression hearing. The trial court later vacated that order. We cannot find that this decision amounted to reversible error. Moreover, as discussed herein, we find that the record supports the trial court's findings of fact, and we discern no errors in the trial court's application of the law.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>7/29/2026</u>